PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EMMANUEL BLANKSON MARFO, | ) | |
| | ) | CASE NO. 3:26-CV-01293 |
| Petitioner, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| *v.* | ) | |
| | ) | **MEMORANDUM OF** |
| KEVIN RAYCRAFT, *et al.*, | ) | **OPINION AND ORDER** |
| | ) | [Resolving ECF Nos. 2, 6, 10] |
| Respondents. | ) | |

## I. INTRODUCTION

The Court considers a Motion for a Preliminary Injunction under Fed. R. Civ. P. 65. *See* ECF No. 10 at PageID #: 140.  Movant is Petitioner Emmanuel Blankson Marfo, a Ghanaian citizen facing removal from the United States and seeking a writ of *habeas corpus* under 28 U.S.C. § 2241.  *See* ECF No. 1.  Respondents are Kevin Raycraft,[1] Markwayne Mullin,[2] and Todd Blanche.[3]  *See* ECF No. 3.  At issue is whether Petitioner has made a clear showing that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.  The issue was briefed and the Court held at a hearing on July 1, 2026.  *See* Minutes of Proceedings [Non-Document] dated 07/01/2026.  As ruled at the hearing and for the reasons detailed herein, the Motion for a Preliminary Injunction is granted.

---

[1] Acting Director, Enforcement and Removal Operations, Detroit Field Office, United States Immigration and Customs Enforcement.

[2] Secretary, United States Department of Homeland Security.

[3] Acting Attorney General, United States Department of Justice

(3:26-CV-01293)

## II. BACKGROUND

### A. *History*

Petitioner, a self-identified member of the LGBTQIA+[4] community, was born in Accra, Ghana on October 25, 1988. *See* ECF No. 7–1 at PageID #: 88.  He entered the United States illegally on December 6, 2021 after crossing the *Sierra de Los Cucapah* mountains in Baja California. *See* ECF No. 7 at PageID #: 66.  He was detained by U.S. Customs and Border Protection ("CBP") officers eight days later. *See* ECF No. 7 at PageID #: 66.  After an interview, a U.S. Immigration and Customs Enforcement ("ICE") agent determined Petitioner was an "alien present in the United States who has not been admitted or paroled" under 8 U.S.C. § 1182(a)(6)(A)(i) of the Immigration and Nationality Act ("INA").[5]  *See* ECF No. 7–2 at PageID #: 91.  Petitioner was ordered to appear for "removal proceedings" before an Executive Office for Immigration Review ("EOIR") immigration judge on January 21, 2022. *See* ECF No. 7–2 at PageID #: 91.  Although the record does not detail all occurrences, at some point, he was released from custody into the United States.

Petitioner left California and settled in Columbus, Ohio, where he lived and worked for the next four years. *See* ECF No. 1 at PageID #: 1.  On June 7, 2024, an immigration judge deemed him "removable" from the United States under 8 U.S.C. § 1182(a)(6)(A)(i) and "ordered [him] removed to Ghana." ECF No. 5–1 at PageID ##: 44–47.  At the same time,

---

[4] *See Defining LGBTQIA+*, The Lesbian, Gay, Bisexual & Transgender Community Center, https://gaycenter.org/community/lgbtq/ (last visited July 6, 2026).

[5] As amended by the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRAIRA").

(3:26-CV-01293)

however, Petitioner was granted a "withholding of removal" under 8 U.S.C. § 1231(b)(3). *See* ECF No. 5–1 at PageID #: 44. The Parties agree that Petitioner remains subject to a "final removal order" under 8 C.F.R. § 1241.1. *See* ECF Nos. 7 at PageID #: 63, 10 at PageID #: 144.

On March 30, 2025, the then Secretary of the U.S. Department of Homeland Security ("DHS"), Kristi Noem, issued a memorandum ("Noem Guidance") to U.S. Citizenship and Immigration Services, CBP, and ICE titled "Guidance Regarding Third Country Removals." *See* ECF No. 5–3 at PageID #: 51. Noem claimed therein that (1) if a country "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured" and (2) "if the Department of State [("DoS")] believes those assurances to be credible," then a noncitizen may be removed to that country "without the need for further procedures." ECF No. 5–3 at PageID ##: 51–52.

A year later, Sierra Leone became the seventh African nation to accept noncitizens removed from the United States under a "Third Country Removal Agreement." *See* Umaru Fofana et al., *Sierra Leone Becomes Latest African Country to Receive Deportees from US,* BBC, https://www.bbc.com/news/articles/cn9pzjvly53o (last visited July 2, 2026). This occurred after the present administration agreed to give Sierra Leone approximately $1,500,000.00 "to support humanitarian and operational costs" related to removal. Abdulai Sayni, *Sierra Leone Receives First Flight of U.S. Deportees Under New Third-Country Deal,* The European Conservative, https://europeanconservative.com/articles/200bnews-corner/sierra-leone-usa-deportees-fatima-jabbe-bio-southwark-london/ (last visited July 1, 2026). Then, corollary to the Noem Guidance, Sierra Leone provided DHS with "diplomatic assurances that the aliens removed from the United States . . . will not be subjected to persecution or torture in Sierra Leone or in any country in which they may be transferred[.]" ECF No. 5–2 at PageID #:

3

(3:26-CV-01293)

49.  DoS "determined that [those] diplomatic assurances were credible" on March 2, 2026.

ECF No. 5–2 at PageID #: 49.

At some point, ICE's Removal Management Division "elevated [ ] Petitioner's name through [DoS] to Sierra Leone for potential removal[.]" ECF No. 5–2 at PageID #: 49.  It "received notification that [ ] Petitioner's name was accepted" for removal to Sierra Leone on May 15, 2026.  ECF No. 5–2 at PageID #: 49.  On the morning of May 29, 2026, ICE agents arrested Petitioner outside of his home in Columbus, took him into federal custody, and detained him at the Corrections Center of Northwest Ohio in the Northern District of Ohio.  *See* ECF No. 2 at PageID #: 21.

### B.  *Proceedings*

While detained in Ohio, on June 3, 2026, Petitioner filed a Petition for a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2241.  *See* ECF No. 1 at PageID #: 2.  He challenges both his detention and Respondents' allegedly unlawful attempt to remove him to Sierra Leone "without providing notice and a meaningful opportunity to respond[.]" ECF No. 1 at PageID #: 10.  The Petition names three causes of action: (*Claim I*) a constitutional violation of substantive due process under the Fifth Amendment; (*Claim II*) a constitutional violation of procedural due process under the Fifth Amendment; and (*Claim III*) a statutory violation of 8 U.S.C. § 1231(a)(6).  *See* ECF No. 1 at PageID ##: 7–11.  He asks the Court to assume jurisdiction, bar his transfer from the Northern District of Ohio, order Respondents to show cause for his detention, declare that his detention is unlawful, and issue a writ of *habeas corpus* commanding his immediate release.  *See* ECF No. 1 at PageID #: 11.  The United States Attorney promptly appeared on Respondents' behalf under 28 U.S.C. § 517.  *See* ECF No. 3.

4

(3:26-CV-01293)

On June 13, 2026, Respondents moved Petitioner from Ohio to the Central Louisiana ICE Processing Center.  *See* ECF No. 2 at PageID #: 21.  They immediately manifested him for removal from the United States on a June 16, 2026 DHS-chartered flight to Sierra Leone.  *See* ECF No. 5 at PageID #: 31.  On June 14, 2026, Petitioner filed a "Notice of Motion and Emergency *Ex Parte* Motion for Temporary Restraining Order" claiming "ICE has informed him that he has been approved for Third Country Deportation" and that he "has not had the opportunity to present a fear-based claim before an Immigration Judge regarding any potential third country of removal." ECF No. 2 at PageID #: 21.  He asked the Court to issue a temporary restraining order under Fed. R. Civ. P. 65(b) requiring Respondents to (1) immediately return him to the Northern District of Ohio and (2) cease "any action towards effectuating [his] deportation to Sierra Leone or any other third country while his Habeas petition is pending." ECF No. 2 at PageID #: 25.  Respondents opposed the motion.  *See* ECF No. 5.

The Court held a telephonic hearing and issued a Temporary Restraining Order on June 17, 2026.  *See* ECF No. 6; Minutes of Proceedings [Non-Document] dated 06/17/2026.  For fourteen days, that Order: (1) enjoined Respondents from removing Petitioner from the United States; (2) commanded Respondents to immediately return Petitioner from Louisiana to the Northern District of Ohio; (3) and once returned, enjoined Respondents from removing Petitioner from the Northern District of Ohio.  *See* ECF No. 6 at PageID ##: 54–55.  The Court simultaneously scheduled briefing and a July 1, 2026 hearing to determine "why a preliminary injunction should not issue upon termination of the Temporary Restraining Order." Minutes of Proceeding [non-document] dated 06/17/2026.  The Parties timely complied.  *See* ECF Nos. 7, 10.

(3:26-CV-01293)

Before the hearing, Respondents filed a "Notice of Release and Suggestion of Mootness" indicating Petitioner had been returned to Ohio and released from ICE custody on June 25, 2026 under an "Order of Supervision." ECF No. 11.  They now argue that the Petition should be dismissed as moot because "Petitioner has been released on an order of supervision" and "is under no collateral consequences he was not previously subject to." ECF No. 11 at PageID #: 196.  Petitioner construed that notice as a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and filed a response arguing that: (1) despite Petitioner's release, live issues remain unresolved; (2) Petitioner remains "in custody" for *habeas* purposes; (3) dismissal "would waste judicial resources and invite repetitive emergency litigation"; and (4) dismissal is inappropriate because Petitioner remains a Fed. R. Civ. P. 23(b)(2) class member in *D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102 (D. Mass. 2026), *stayed pending appeal*, No. 26-1212 (1st Cir. filed Feb. 28, 2026).  ECF No. 12 at PageID ##: 205–11.  Respondents aligned with Petitioner's Fed. R. Civ. P. 12(b)(1) construction and replied in support of their motion to dismiss.  *See* ECF No. 13.

Because Petitioner's release under an "Order of Supervision" required him to report to an ICE office in Westerville, Ohio on June 29, 2026, the Court ordered the Parties to confer and jointly file a notice explaining, *inter alia*, the outcome of that appointment (*i.e.*, whether Petitioner was redetained and, if so, the legal basis for that detention).  *See* ECF No. 14.  They complied and notified the Court that Petitioner: (1) reported to ICE as ordered; (2) was not redetained; (3) was enrolled in DHS' "Alternatives to Detention" program; (4) was affixed with ankle monitor; and (5) was ordered to report to ICE every four weeks.  *See* ECF No. 15 at PageID #: 226.  Respondents indicate that although they "have no removal plans in place at this time[,]" they are still "reviewing and discussing the government's options regarding

6

(3:26-CV-01293)

Petitioner's potential future removal to a third country that is not Ghana."  ECF No. 15 at

PageID #: 226.

On July 1, 2026, the Court held a hearing to resolve Petitioner's Motion for a

Preliminary Injunction under Fed. R. Civ. P. 65.  *See* Minutes of Proceedings [Non-Document]

dated 07/01/2026.  After reviewing the briefings and considering the Parties' arguments, the

Court granted Petitioner's motion and ordered that "[u]ntil the underlying 28 U.S.C. § 2241

Petition is resolved, Respondents are enjoined from: (1) removing Petitioner from the United

States to any other nation, including Sierra Leone; and (2) removing Petitioner from Ohio."

*See* Minutes of Proceedings [Non-Document] dated 07/01/2026.  This Memorandum of Order

and Opinion further explains that decision.

### III. LAW

### A. *Habeas Corpus*

A writ of *habeas corpus* is an Article III order "employed to bring a person before a

court . . . to ensure [their] imprisonment or detention is not illegal."  *Habeas Corpus*, Black's

Law Dictionary (12th ed. 2024).  It is "available to every individual detained within the United

States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).

Title 28 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs *habeas*

review in federal courts.  *See* 28 U.S.C. §§ 2241–2255.  And 28 U.S.C. § 2241—the "basic"

*habeas* statute—gives federal courts authority to order release from unlawful detention.  *See*

*Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).  Relevant here, obtaining *habeas* relief requires a

petitioner to show he is "in custody in violation of the Constitution or laws . . . of the United

States[.]"  28 U.S.C. § 2241(c)(3).  Noncitizens facing deportation (like Petitioner) may use 28

(3:26-CV-01293)

U.S.C. § 2241 to raise statutory and constitutional challenges to removal-based confinement and proceedings.  *See Zadvydas*, 533 U.S. at 687.

### B.  *Jurisdiction*

Federal courts can only resolve cases "that Congress grants them power to hear."  *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. 421, 424 (2026).  Their subject matter jurisdiction is generally limited to diversity claims under 28 U.S.C. § 1332 and federal questions under 28 U.S.C. § 1331.  *See Johnson v. Antkoviak*, 171 F.4th 819, 821 (6th Cir. 2026).  Consistent with the Constitution's Suspension Clause, 28 U.S.C. § 2241(a) contains a self-executing jurisdictional hook through which "[w]rits of habeas corpus may be granted by . . . district courts . . . within their respective jurisdictions."  *See* U.S. Const. Art. I, § 9, cl. 2; *Clardy v. Pounds*, 126 F.4th 1201, 1208 (6th Cir. 2025).  Because Petitioner raises constitutional and statutory challenges under 28 U.S.C. § 2241, the Court appears to have jurisdiction to review his subsidiary request for injunctive relief.

After briefing and before oral argument, however, Respondents filed a "Notice of Release and Suggestion of Mootness" arguing the Court lacks jurisdiction because Petitioner is no longer "in custody" as required by 28 U.S.C. § 2241(c).  *See* ECF No. 11 at PageID #: 194.  Petitioner disagrees and says his "unilateral release . . . from physical custody does not moot this habeas action" (*i.e.*, that he remains "in custody" because he is on temporary release under an "Order of Supervision").  ECF No. 12 at PageID #: 204.  Both positions are well-reasoned and deserve thorough review before resolution.  At the same time, however, the Court emphasizes its "jurisdiction to determine [its] own jurisdiction," particularly when—as is often the case when weighing injunctive relief—time is of the essence.  *Brownback v. King*, 592 U.S. 209, 218 (2021) (quoting *United States v. Ruiz*, 536 U.S. 622, 628 (2002)).  That authority

8

(3:26-CV-01293)

"unquestionably" includes "the power to issue a restraining order for the purpose of preserving existing conditions pending a decision upon [its] own jurisdiction." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 290 (1947).  And under the All Writs Act, "courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

"It takes time to decide a case[.]" *Nken v. Holder*, 556 U.S. 418, 421 (2009).  And "if a court takes the time it needs, [its] decision may in some cases come too late for the party seeking review." *Id.*  Therefore, the Court asserts its authority to grant injunctive relief as a matter of equity while it expeditiously considers its jurisdiction over the Petition *writ large*. See *United Mine Workers*, 330 U.S. at 290.

### C.  *Preliminary Injunction*

A preliminary injunction is a court order prohibiting someone from doing a specified act or commanding someone to undo a wrong.  See *Preliminary Injunction*, Black's Law Dictionary (12th ed. 2024).  It is an "extraordinary and drastic remedy" never granted "on easy terms." *Kerwin on behalf of Natl. Lab. Rel. Bd. v. Trinity Health Grand Haven Hosp.*, 174 F.4th 942, 949 (6th Cir. 2026) (quoting *James B. Oswald Co. v. Neate*, 98 F.4th 666, 672 (6th Cir. 2024)).  Its limited purpose is "to preserve the relative positions of the parties until a trial on the merits can be held." *EOG Res., Inc. v. Lucky Land Mgt., LLC*, 134 F.4th 868, 883 (6th Cir. 2025) (quoting *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024)).

While Fed. R. Civ. P. 65 addresses preliminary injunctions and temporary restraining orders, it does not prescribe precise standards.  Instead, it provides only collateral requirements (*e.g.*, notice, duration, form, and security), leaving *whether* and *when* to issue an injunction "to

9

(3:26-CV-01293)

the discretion of the courts in accordance with traditional principles of equity." Thomas R. Lee, *Preliminary Injunctions and the Status Quo*, 58 Wash. & Lee L. Rev. 109, 110 (2001). Guided by the four-part balancing test from *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 12 (2008), however, federal courts generally concur on the substantive standard. *See id.* And "absent a clear command from Congress, courts must adhere to the traditional four-factor test." *Starbucks*, 602 U.S. at 346.

To obtain a preliminary injunction in the Sixth Circuit, the movant must make a "clear showing" that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.[6] *See Kerwin*, 174 F.4th at 949 (citing *Starbucks*, 602 U.S. at 346). These factors "are not prerequisites, but [must] be balanced against each other." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 385 (6th Cir. 2020) (quoting *Overstreet v. Lexington-Fayette Urb. Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)). The third and fourth factors merge when the Government is the party opposing the injunction. *See Nken*, 556 U.S. at 435. The movant bears the burden of justifying injunctive relief. *See Hargett*, 978

---

[6] Some panels in the Sixth Circuit frame the third factor as asking, "whether issuance of the injunction would cause substantial harm to others." *Int'l Union of Painters & Allied Trades Dist. Council No. 6 v. Smith*, 148 F.4th 365, 371 (6th Cir. 2025); *see also Libertarian Nat'l Comm., Inc. v. Saliba*, 116 F.4th 530, 533 (6th Cir. 2024); *Ohio v. Becerra*, 87 F.4th 759, 768 (6th Cir. 2023). Others—as applied here—ask "whether the balance of equities tips in [the movant's] favor." *EOG*, 134 F.4th at 874; *see also Hess v. Oakland Cty., Michigan*, 174 F.4th 981, 991 (6th Cir. 2026); *Churchill Downs Tech. Initiatives Co. v. Michigan Gaming Control Bd.*, 162 F.4th 631, 637 (6th Cir. 2025). Despite this discordant phrasing, the Court views both variations as functionally asking the same question: whether "principles of equity" support injunctive relief. *S. Ohio Coal Co. v. United Mine Workers of Am.*, 551 F.2d 695, 701 (6th Cir. 1977).

(3:26-CV-01293)

F.3d at 385 (citing *Am. C.L. Union Fund of Michigan v. Livingston Cty.*, 796 F.3d 636, 642 (6th Cir. 2015).

While preliminary injunctions are "matter[s] of equitable discretion," *Benisek v. Lamone*, 585 U.S. 155, 158 (2018), the Sixth Circuit cautions district courts to avoid allowing "the language of balancing creep so that they let a strong showing on one or two factors . . . eliminate the need for any showing on another[.]" *EOG*, 134 F.4th at 883. While "irreparable harm" and "likelihood of success" typically predominate, the "failure to make a clear showing as to any of the four factors sinks the [movant's] request, regardless of how strongly other factors might favor [him]." *Kerwin*, 174 F.4th at 949 (citing *Nken*, 556 U.S. at 434 and *EOG*, 134 F.4th at 885). The Court addresses each factor in turn.

## IV. DISCUSSION

### A. *Likelihood of Success*

Although "likelihood of success" has been articulated "in a bewildering variety of formulations . . . at core, it asks courts to predict how likely it is that a party seeking preliminary relief will ultimately prevail on the merits of their claims." *Starbucks*, 602 U.S. at 362 (Jackson, J. concurring in part) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.3, p. 197 (3d ed. 2013)). Before a court assesses this factor, however, it must "define what success means in this context" (*i.e.*, "the merits issues upon which the [movant] must prevail"). *Kerwin*, 174 F.4th at 949. That means (1) identifying the governing framework of the underlying claim(s), *see Hargett*, 978 F.3d at 391, and (2) determining whether the movant has made a "clear showing that [he] is likely to succeed" on them. *Id.* at 950.

11

(3:26-CV-01293)

A preliminary injunction does not necessarily "follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek*, 585 U.S. at 158.  While purely a question of law, *see Hargett*, 978 F.3d at 385 (citing *Ammex, Inc. v. Wenk*, 936 F.3d 355, 360–61 (6th Cir. 2019)), "every court resolving a preliminary injunction . . . must inevitably make reasonable predictions . . . based on existing evidence[.]" *Id.* at 955.  Because Petitioner seeks *habeas* relief under 28 U.S.C. § 2241, obtaining injunctive relief requires him to make a "clear showing" that he is likely to succeed on the constitutional and statutory claims that he is "in custody in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2241(c)(3).

*     *     *

Claim I asserts a violation of substantive due process under the Fifth Amendment.  It requires Petitioner to show (1) "a deprivation of a constitutionally protected liberty interest" and (2) that "the government's discretionary conduct that deprived that interest was constitutionally repugnant." *Siefert v. Hamilton Cty.*, 951 F.3d 753, 765 (6th Cir. 2020) (quoting *Guertin v. State*, 912 F.3d 907, 922 (6th Cir. 2019)).

The Court finds Petitioner likely to succeed on Claim I.  He holds a constitutionally protected liberty interest in freedom from removal to a country where he faces persecution, particularly given his existing grant of withholding to Ghana based on persecution tied to LGBTQIA+ status. *See* ECF No. 1 at PageID ##: 1–2.  He has shown that Respondents' conduct is constitutionally repugnant because—after granting him withholding of removal to Ghana and approving his A-10 employment authorization—they abruptly detained him, abandoned his selected removal to Canada, and pivoted to Sierra Leone based on generalized

12

(3:26-CV-01293)

diplomatic assurances.  *See* ECF No. 10 at PageID ##: 140–41.  That reversal appears to be an arbitrary exercise of executive power repugnant to substantive due process.

*        *        *

Claim II asserts a violation of procedural due process under the Fifth Amendment.  It requires Petitioner to show (1) the deprivation of a constitutionally protected interest in life, liberty, or property (2) without adequate process.  *See Lifestyle Communities, Ltd. v. City of Worthington, Ohio*, 165 F.4th 1013, 1026 (6th Cir. 2026)  (quoting *Reed v. Goertz*, 598 U.S. 230, 236 (2023)).  It is "well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  Petitioner has the right to seek deferral or withholding of removal based on legitimate fear-based claims.  *See Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005).  The adequacy of process depends on: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The Court finds Petitioner likely to succeed on Claim II.  The record shows he received neither notice nor a meaningful opportunity to respond before Respondents rushed to remove him to Sierra Leone.  It appears they did not provide him with supporting paperwork or afford him the opportunity to present fear-based claims based on his LGBTQIA+ status to countries other than Ghana.  *See* ECF No. 1 at PageID #: 8.  His private interest is significant because he holds a withholding of removal to Ghana based on fear of LGBTQIA+ persecution there, due to

13

(3:26-CV-01293)

his sexual orientation which is a status similarly criminalized in Sierra Leone.  *See* ECF No. 1 at PageID #: 8.  Respondents' reliance on generalized diplomatic assurances that individuals removed there "will not be subject to persecution or torture" is insufficiently individualized and untethered to Petitioner's particular circumstances.  *See* ECF No. 10 at PageID #: 146.  In accord with *Mathews*, the risk of erroneous, irreversible removal outweighs Respondents' nominal procedural burden to provide adequate notice and country-specific screening opportunities.

\*    \*    \*

Claim III asserts a violation of 8 U.S.C. § 1231(a)(6), which says that:

> [a]n alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

Under that statute, post-removal detention is authorized only to the extent it is reasonably related to effectuating a noncitizen's removal.  *See Zadvydas*, 533 U.S. at 699–701.  Once removal is no longer reasonably foreseeable, continued detention exceeds 8 U.S.C. § 1231(a)(6)'s implicit limits.  *See id.* at 699.  Six months is considered a presumptively reasonable period of confinement, after which the burden shifts to the respondent to show a likelihood of removal in the reasonably foreseeable future.  *See id.* at 701.  And because 28 U.S.C. § 2241 gives the Court authority to decide whether Petitioner's post-removal detention is statutorily authorized, it does not require deference to the respondent's view on whether implicit reasonableness is satisfied.  *See Zadvydas*, 533 U.S. at 699.

14

(3:26-CV-01293)

The Court finds Petitioner likely to succeed on Claim III.  Even though he was detained on May 29, 2026, his statutory challenge does not turn on *Zadvydas'* six-month presumption, but on the absence of lawful and reasonably foreseeable removal.  *See* ECF No. 1 at PageID #: 2.  Post-removal detention must be reasonably related to effectuating removal, and Petitioner has plausibly shown that Respondents have not: (1) complied with 8 U.S.C. § 1231's statutory sequence in selecting countries for removal; (2) established that removal to Sierra Leone is lawful or executable; or (3) explained why Petitioner's voluntary relocation to Canada was abandoned in favor of involuntary removal to Sierra Leone.  *See* ECF No. 7 at PageID #: 66.  The fact that Respondents detained Petitioner nearly two years after granting him withholding of removal suggests they have no lawful or foreseeable basis to justify his imminent deportation.

\*        \*        \*

Because Petitioner is likely to succeed on Claims I, II, and III, the Court finds he has made a clear showing that he is likely to succeed in arguing his detention and removal proceedings are "in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2241(c)(3).  The first preliminary injunction factor favors Petitioner.

### B. *Irreparable Harm*

An "irreparable harm" is an injury "not fully compensable by monetary damages."  *EOG*, 134 F.4th at 884 (quoting *Overstreet*, 305 F.3d at 578).  That means its damages are "inadequate" or "particularly difficult to calculate."  *Id.*  It exists if, "without an interim freeze-in-place order, the court could lose its ability to right any wrongs."  *Id.* at 885.  This is "the core of the preliminary injunction," *Kerwin*, 174 F.4th at 949 (quoting *id.* at 883) (cleaned up), so "even the strongest showing on the other three factors cannot eliminate the irreparable harm

15

(3:26-CV-01293)

requirement." *Hargett*, 978 F.3d at 385 (quoting *D.T. v. Sumner Cty. Schools*, 942 F.3d 324, 326–27 (6th Cir. 2019)) (cleaned up); *see EOG*, 134 F.4th at 883 ("while the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory") (emphasis original).  The irreparable harm must also be "certain and immediate," not "speculative or theoretical." *D.T.*, 942 F.3d at 327.  And the mere "possibility" of irreparable harm is not enough; the movant must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis original).  District courts are therefore "well within [their] province" to deny preliminary injunctions "based solely on the lack of an irreparable injury." *D.T.*, 942 F.3d at 327; *see EOG*, 134 F.4th at 885 ("No irreparable harm?  No preliminary injunction").

\*       \*       \*

Petitioner has made a clear showing that he is likely to suffer irreparable harm without a preliminary injunction.  As counsel noted at the July 1, 2026 hearing, "wrongful removal to Sierra Leone, a country to which he has absolutely no connection and where homosexual relations are criminalized, would expose him to persecution based on his sexual orientation." ECF No. 17 at PageID #: 236:19–22.  And under these circumstances, "removal would moot [the] petition for review, causing the alien irreparable harm." *Qi Yang Chen v. Holder*, 441 F. App'x 342, 347 (6th Cir. 2011).  In an earlier case, the Court found that "[removing] individuals to a place where they will be persecuted or tortured constitutes irreparable harm." *E.V. v. Raycraft*, No. 4:25-CV-2069, 2025 WL 3122837, at \*8 (N.D. Ohio Nov. 7, 2025) (citing *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733–34 (D.C. Cir. 2022)).  Here, it agrees that "[i]f Petitioner is removed before the Court resolves his habeas petition, the deprivation of liberty

16

(3:26-CV-01293)

and the risk of wrongful removal cannot be undone through ordinary *post hoc* relief." ECF No. 10 at PageID #: 143. The second preliminary injunction factor favors Petitioner.

### C. *Balance of Equities & Public Interest*

As noted, the third and fourth factors merge when, as here, the Government opposes the preliminary injunction. *See Nken*, 556 U.S. at 435. To balance the equities, district courts compare "the harms the plaintiff might suffer" to "the harms the defendant might suffer" and then determine "where the greatest harm would fall." *EOG*, 134 F.4th at 885–86. This requires "balanc[ing] the competing claims of injury" and "considering the effect on each party of the granting or withholding of [injunctive] relief." *Id.* (quoting *Winter*, 555 U.S. at 24) (cleaned up). "In assessing the balance of the equities, courts go beyond the harm faced by the moving party and ask whether an injunction would harm the non-moving party even more." *Kerwin*, 174 F.4th at 959. And because of the extraordinary nature of preliminary injunctions, the Court must "pay[ ] particular regard to the public consequences" of "granting or withholding the requested relief[.]" *Winter*, 555 U.S. at 12 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

*     *     *

Petitioner has made a clear showing that the balance of the equities and the public interest favor a preliminary injunction. There is undoubtedly "always a public interest in prompt execution of removal orders" because "the continued presence of an alien lawfully deemed removable . . . permits and prolongs a continuing violation of United States law." *Id.* (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999)) (cleaned up). "[T]he Government's role as the respondent in every removal proceeding does not make the public interest in each individual [removal] negligible[.]" *Id.* at 435. Conversely, there is

17

(3:26-CV-01293)

"a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken*, 556 U.S. at 436.  Furthermore, "there is no public interest in perpetuating unlawful executive action." *E.V.*, 2025 WL 3122837, at *8. The third and fourth preliminary factors, when considered together, favor Petitioner.

## V. CONCLUSION

"Given the serious question on the merits, the undisputedly strong showing of irreparable harm, and [Petitioner]'s interest in avoiding wrongful removal," the Court concludes that a preliminary injunction pending a merits determination "is necessary to preserve any value in hearing [t]his case[.]" *Antonio v. Garland*, 38 F.4th 524, 527 (6th Cir. 2022).  Petitioner's Motion is therefore granted under Fed. R. Civ. P. 65.  *See* ECF No. 10 at PageID #: 140.

Pending further order of the Court, Respondents are enjoined from: (1) removing Petitioner from the United States, including to Sierra Leone; and (2) removing Petitioner from Ohio until the resolution of Petitioner's application for *habeas* relief under 28 U.S.C. § 2241. Plaintiff is ordered to post bond in the amount of $1.00 with the Clerk of Court under Local Rule 65.1.1.  The posting of bond shall be reflected on the public docket.


IT IS SO ORDERED.


July 13, 2026                                                     */s/ Benita Y. Pearson*
Date                                                              Benita Y. Pearson
                                                                 United States District Judge

18